**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**
_____

JIMMIE LEE,

        Plaintiff,

vs.                                  No. Civ. 97-65 JC/WWD

KENNETH S. APFEL, COMMISSIONER
OF SOCIAL SECURITY ADMINISTRATION,[1]

        Defendant.

**MAGISTRATE JUDGE'S PROPOSED FINDINGS
AND RECOMMENDED DISPOSITION**

**Proposed Findings**

    1.   This matter comes before the Court upon plaintiff's Motion to Reverse Administrative

Decision, or in the Alternative, to Remand for Further Proceedings, filed December 31, 1997  [9-

1].  The Commissioner denied plaintiff's request for Supplemental Security Income benefits.

Plaintiff was 52 years old at the time of the hearing which was held on October 16, 1995,

understands and speaks very little English, and has a 6th grade formal education.  Mr. Lee's work

history is very limited, except for heavy manual labor.  He alleges a disability which commenced

October 28, 1992, due to joint pain and arthritis.

    2.   The Commissioner denied Plaintiff's application for benefits both initially and on

_____

    [1]  President Clinton appointed Kenneth S. Apfel Commissioner of Social Security as of
August 29, 1997.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Kenneth S.
Apfel should be substituted as defendant for Acting Commissioner John J.Callahan, who was the
appropriate party at the time of the underlying decision.  No further action need be taken to
continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42
U.S.C. § 405(g).

reconsideration.  After conducting an administrative hearing, the Commissioner's Administrative

Law Judge ("ALJ") likewise denied the applications, concluding that Mr. Lee has the residual

functional capacity to perform the full range of medium work except for heavy lifting and carrying

and that there were no nonexertional limitations.  The ALJ further found that plaintiff was only

partially credible.  The Appeals Council denied Mr. Lee's request for review of the ALJ's

decision, thus the ALJ's decision is the final decision of the Commissioner.  Plaintiff now seeks

review of that final decision pursuant to 42 U.S.C. §405(g).

3.   The standard of review in social security appeals is whether the Commissioner's final

decision, in this case the ALJ's decision, is supported by substantial evidence.  Thompson v.

Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993)(citations omitted).  Additionally, the

Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests.  Id.

(citation omitted).

4.   Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1)

the ALJ's finding that plaintiff had a limited education is not supported by substantial evidence

and should be reversed; (2) the ALJ's finding that plaintiff was only partially credible is

unsupported by substantial evidence, does not comport with the correct legal standard and is

inconsistent with his finding that Mr. Lee has severe degenerative joint disease; and (3) the ALJ

erred when he ignored Mr. Lee's nonexertional limitations imposed by his visual impairment and

in not obtaining additional evidence.

5.   "To qualify for disability benefits, a claimant must establish a severe physical or mental

impairment expected to result in death or last for a continuous period of twelve months which

prevents the claimant from engaging in substantial gainful activity."  Thompson at 1486  (42

2

U.S.C. § 1382c(a)(3)(A)).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. § 416.920. The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled.  Id. (citations omitted).

6.   At the first four levels of the evaluation, the claimant must show:  (1) that he  is not working; (2) that he has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he is unable to perform work done in the past.  At the fifth step, the Commissioner must produce evidence regarding the claimant's ability to perform other work.  Reyes v. Bowen, 845 F.2d 242, 243 (10th Cir. 1988).

7.   The first four steps of the sequential evaluation process are not at issue in this case. At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than  past relevant work. Thompson at 1487 (citations omitted).  The Medical-Vocational Guidelines ("grids") are used at this step to determine whether disability exists.  20 C.F.R. Part 404, Subpt. P, App. 2.  The grids reflect the existence of jobs in the national economy at various "RFC" levels by incorporating administrative notice of occupational publications and studies.  20 C.F.R. §§404.1566(d); 416.966(d).  This aids the Commissioner in determining what specific job types in the national economy the claimant can perform.  The grids assume that the claimant's sole limitation is lack of strength, i.e., an exertional impairment.  20 C.F.R. Part 404, Subpt. P, App. 2, §2000(e)(2).

**Background**

8.   Plaintiff's chief complaint is low back pain, which he claims is constant.  He also

3

complains of constant pain in all of his joints, especially his hands and ankles.   Tr. at 89.   The

pain and joint swelling in both of his hands makes him afraid to lift or carry anything heavy

because he might drop it.   He remembers dropping a pot of coffee recently because of this

weakness.   Tr. at 87, 90.   The pain is only somewhat relieved by a muscle relaxant

(Chlorzoxazone) taken at bedtime, Tylenol and Ibuprofen.   Tr. at 14, 88.   When the pain occurs

at night, Mr. Lee takes medication and waits "until the pain kind of goes away."   Tr. at 91.

Plaintiff also experienced left eye trauma in 1961 which left him with poor vision in his left eye

and which tends to make him trip when walking.   Tr. at 90.

    9.    Mr. Lee lives with his wife and daughter in meager circumstances.   His daughter

prepares the firewood to heat the house.   The family also has two goats who wander around the

house, but which don't require much work to keep alive.   Tr. at 92.   Because the house has no

running water, plaintiff must bring water into the house in small buckets.   Tr. at 91.

    10.    Plaintiff claimed that he is unable to sit for more than an hour before he needs to

change positions.   Tr. at 87-88, 91.   He can walk about two blocks before he has to rest.   Tr. at

92.   Back pain increases upon lifting or bending over or when he tries to wash dishes.   Tr. at 87-

88, 92.   Although Mr. Lee can dress himself, his wife helps him bathe because he has difficulty

reaching down to scrub.   Tr. at 88.   He can lift a bucket containing two or three gallons of water.

He stated at the hearing that the pain he gets upon walking sometimes makes him reluctant to use

the outhouse.   Tr. at 92.

    11.    Plaintiff's work experience is limited to a 90-day training program about two years

ago at the Navajo tribal farm near Farmington, consisting of picking squash.   Mr. Lee left the

program after one month because of back pain.   He has not had any other job in the last fifteen

4

years, and subsists on General Assistance.  Plaintiff's position is that his back and joint pain

prevent him from doing all work.  He told the ALJ that because his knees hurt when he walks,

"the only thing I can do is just not really do any work, just kind of take it easy, that's the only

thing I can do."  Tr. at 93.[2]

12.   Plaintiff saw Dr. Leonore Herrera on a medical consult on September 21, 1994.   Dr.

Herrera's conclusions as to plaintiff's limitations were guided by his "complaints of inability to sit,

stand, walk, or climb."  Tr. at 63.  She opined that manual or heavy labor was precluded and that

plaintiff's visual acuity deficit (20/50 on the right eye; 20/800 on the left) would pose some

difficulty with sedentary clerical work.  Id.  She noted that Mr. Lee's complaints of pain would

limit his ability to do activities which required repetitive bending at the waist, hips, knees and

ankles, but that the pain elicited on range of motion deficits were "not severe or significant."  Id.

13.   Dr. Herrera's report stated that plaintiff's "inability to read or write," his limited

education and problems with manual dexterity were additional limitations.  Tr. at 64.  This report

is the only doctor's report contained in the record.  Mr. Lee, in a letter to the Appeals Council,

pointed out that he lives in a remote area on a dirt road 12 miles off the main highway, with no

reliable means of transportation.  Tr. at 7.

14.   A February 1995 radiology report shows that Mr. Lee has a moderate kypho-

scoliosis of the thoracic spine with degenerative changes, resulting in a diagnosis of "moderate

degenerative joint disease" ("DJD").  Tr. at 69, 73.

**First Alleged Error**

---

[2]  Plaintiff's disability report, however, which was filled out in August 1994, states that he
"does have the energy to work."  Tr. at 50.

15.   Plaintiff contends that the ALJ's finding that plaintiff had a "limited" education, as opposed to "marginal" education, is not supported by substantial evidence and should be reversed.[3]  The government concedes the error, but views it as a "technical error" which has no practical impact on the ALJ's finding, or any effect on the due process plaintiff was afforded.  The government's position is that Rule 203.18, the vocational guideline relied on by the ALJ, refers to an education that is "limited or less," including both "limited" and "marginal" levels and directs a determination of "not disabled."

16.   However, even assuming that the ALJ was correct in finding that plaintiff had a residual functional capacity to perform medium level work, the regulations offer guidance in the use of the grids which suggests that the error is not simple technical error.  A "marginal" education in circumstances where work experience was limited to "arduous unskilled labor" may direct a finding of disability "even though the individual is able to do medium work."  See 20 C.F.R., Pt.404,Subpt.P, App.2, § 203.00.

17.   The regulations also take other factors regarding education into account, such as the amount of time that has elapsed between the completion of formal education and the onset of claimant's impairment. § 416.964.  The government supplies its own gloss to this particular text and submits that it applies only to more advanced or technical training.  However, given a plain reading, it seems clear to me that the regulation considers the "numerical grade level . . . completed" as "formal" education.

18.   Thus, the fact that Mr. Lee completed his formal education which ended at the 6th

---

[3]  The regulations define a "limited" education as " a 7th grade through the 11th grade level of formal education," and "marginal" education as a "6th grade education or less. . . ." 20 C.F.R. § 416.964.

grade level over 45 years ago should have been taken into account, even when the grids are used. The fact that plaintiff's formal education consisted only of the basic reading, writing and arithmetic skills does not mean that these skills cannot become more or less useful over a long span of time in terms of ability to work.

19.   The status of plaintiff's literacy is unclear.  Depending on his true residual functional capacity, his ability to read and write English can be critical to whether he is determined to be disabled.   For example, in the grids for light work, an unskilled claimant who is illiterate and approaching advanced age would be considered disabled (Rule 209.09), but not if he were literate and able to communicate in English (Rule 202.10).

20.   Dr. Herrera noted that Mr. Lee "communicates in English."  Tr. at 62.  In the same report, however, she found his inability to read or write English to be limiting.  Tr. at 64. Plaintiff's memory of the visit was that he "really couldn't communicate with [the doctor]."  Tr. at 93.  His disability application forms were filled out by a social worker from the senior citizen center who spoke Navajo.  Tr. at 85.   On one page a box was checked "YES" next to "Does claimant speak English?"  Tr. at 52.  On the next page the social worker wrote "states can't read or write - states limited education."  By the end of the hearing, even the ALJ seemed frustrated, although an interpreter was used.  Tr. at 93 ("I'm no better off than when I started, Counsel"). The record contains insufficient information for the ALJ to have made a determination about plaintiff's literacy.

21.   In this case, the ALJ's determinations regarding the issues of educational level and literacy were not based on substantial evidence.  Since these matters could potentially have an impact on the ultimate question of disability, the ALJ should make appropriate inquiries upon

remand.

**Second Alleged Error**

22.   Plaintiff next alleges that the ALJ's finding that plaintiff was only partially credible is unsupported by substantial evidence, does not comport with the correct legal standard and is inconsistent with his finding that Mr. Lee has severe degenerative joint disease.  I find that the ALJ used the proper legal framework as set out in the regulations (§ 416.929) and controlling case law, see Luna v. Bowen, 834 F.2d 161, 165-66 (10th Cir. 1987), but that it was erroneously applied in examining Mr. Lee's subjective complaints, and also was not based on substantial evidence.

23.   The ALJ acknowledged that plaintiff "doubtlessly experiences some discomfort." Tr. at 14.  This statement sufficiently tracks Luna's threshold inquiry which looks for a "loose nexus" between the impairment and the alleged pain such that the ALJ was then required to consider all relevant evidence.  Luna v. Bowen, 834 F.2d at 164.

24.   In his decision, the ALJ stated that the medical evidence revealing "moderate degenerative joint disease" did not support plaintiff's "allegations of severe pain." Tr. at 14.  The ALJ erroneously relied on the objective medical evidence as support for the *degree* of pain plaintiff claimed to suffer.  This is contrary to the law in this circuit, as a claimant is not required to present objective medical evidence to corroborate the degree of pain.  Huston v. Bowen, 838 F.2d 1125 (10th Cir. 1988); Luna v. Bowen, 834 F.2d 161, 165 (10th Cir. 1987).

25.   I find no inconsistency, as plaintiff does, in the ALJ's use of the word "severe" in his finding of fact #2, Tr. at 15, where elsewhere the ALJ discounted plaintiff's credibility on the fact that he was diagnosed with only "moderate" DJD.  The latter references described the medical

severity of the condition (see also Tr. at 13 & 14) while the finding of a "severe" impairment was clearly a step two finding requiring a "severe" impairment in order to proceed to the next level of inquiry.

26.   The objective medical evidence was neither absent or inconsistent with plaintiff's complaints of pain. Cmp., Luna at 165; Thompson, 987 F.2d at 1482 (the absence of an objective medical basis for the degree of severity of pain may affect the weight to be given to the claimant's subjective allegations of pain).  Dr. Herrera stated in her report that Mr. Lee was "very consistent in his ability to describe the kind of pain he has in the range of motion deficits, although not severe or significant." Tr. at 63.  This statement may have provided a basis for discounting the degree of pain if the other factors supported the discounting as well.

27.   Although the factors the ALJ listed in considering Mr. Lee's subjective complaints were correct, the findings which resulted were not based on substantial evidence.  These factors included medical reports, daily activities, current medications and the claimant's appearance and actions.  20 C.F.R. § 416.929.  The ALJ did not explain, or even allude to *how* his daily activities (whatever they were) were inconsistent with the subjective complaints of severe pain.[4]   Neither did he suggest how Mr. Lee's "appearance" lent an air of noncredibility to his testimony.

28.   Thus, the ALJ's findings based on these other factors were lacking in detail such that I cannot consider them to be based on substantial evidence.  See Kepler v. Chater, 68 F.3d 387 (10th Cir. 1995) (ALJ must explain why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible); Winfrey v. Chater, 92 F.3d 1017,

---

[4]  Plaintiff's disability report states that he does "30 minutes of house chores. . . no outside work, cannot stand for hours . . . no recreational activities. . . seldoms visits. . . rides [car?] for 1 hour once a month to go to store." Tr. at 49.

1021 (10th Cir. Okla) (findings as to credibility should be closely and affirmatively linked to substantial evidence).  This issue should be remanded for a proper credibility analysis.

**Third Alleged Error**

29.   Last, plaintiff contends that the ALJ erred when he ignored Mr. Lee's nonexertional limitations imposed by his visual impairment and in not obtaining additional evidence.  Plaintiff also argues that his other medical impairments impose nonexertional limitations (such as pain) on his ability to work such that the ALJ should not have relied on the grids in finding him not disabled.

30.   The ALJ did not err in using the grids based on plaintiff's visual impairment.  There is no evidence in the record to suggest that it would affect his ability to work.  See Ray v. Bowen, 865 F.2d 222, 225 (10th Cir. 1989) (mere presence of non-exertional impairments do not automatically preclude reliance on the grids; it must interfere with the ability to work), cited in Thompson v. Sullivan, 987 F.2d 1482, 1488 (10th Cir. 1993).  It was plaintiff's burden to produce such evidence.  Hawkins v. Chater, 113 F.3d 1162 (10th Cir.1997) ("It is beyond dispute that the burden to prove disability in a social security case is on the claimant").

31.   However, in this case, use of grids may be precluded if found to have a nonexertional impairment from pain which limits ability to work.  Huston v. Bowen, 838 F.2d 1125, 1131-32 (10th Cir. 1988) (if the nonmedical evidence of pain is credible, it will preclude the mechanical application of the grids).  This inquiry should be done on remand.  Obviously, the ALJ may need to consider other issues should the plaintiff's subjective complaints of severe pain be found to be

credible, depending on the residual functional capacity Mr. Lee is then found to have.[5]

32.   In sum, (1) the ALJ's finding that plaintiff had a limited education is not supported by substantial evidence and should be reversed; (2) the ALJ's finding that plaintiff was only partially credible is consistent with his finding that Mr. Lee has severe degenerative joint disease, but is otherwise unsupported by substantial evidence and does not comport with the correct legal standard; and (3) the ALJ did not err in ignoring Mr. Lee's visual impairment as a nonexertional limitation precluding use of the grids.

### Recommendation

I recommend that plaintiff's Motion to Reverse Administrative Decision, or in the Alternative, to Remand for Further Proceedings [9-1], be granted and that this cause be remanded to the Commissioner for the following: (1) to consider whether plaintiff's ability to work is affected by the length of time which has lapsed since plaintiff's formal education ended and the type of work Mr. Lee did and to make further inquiry to determine status of plaintiff's ability to read & write English; (2) to conduct a proper credibility inquiry where express findings are made; and (3) if plaintiff's complaints of severe pain are found to be credible, the ALJ should then proceed to a step five analysis in order to consider what level of work plaintiff is able to perform. The ALJ should take into account whether and to what degree plaintiff's nonexertional

---

[5]   For example, if the plaintiff were restricted to sedentary work, the ALJ should consult a vocational expert to determine whether plaintiff's hand weakness or visual acuity might affect the occupational base.  See SSR-83-10 ("Most unskilled sedentary jobs require good use of the hands and fingers for repetitive hand-finger actions"); Ragland v. Shalala, 992 F.2d 1056, 1059 (10th Cir. 1993) (where a claimant cannot sit or stand for prolonged periods of time, the ALJ must consult a vocational expert before making a determination).

impairment of pain affects his ability to perform sustained work in a particular category.  Timely

objections to the foregoing may be made pursuant to 28 U.S.C. § 636(b)(1)(C).

UNITED STATES MAGISTRATE JUDGE